IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| TYLER KEEN, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Case No. 5:15 – CV – 00137 - OLG |
| DXP ENTERPRISES, INC., | § § | |
| Defendant. | § § | |

## PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

For his Motion for Partial Summary Judgment, Plaintiff Tyler Keen shows the following:

### Introduction

This is an action for unpaid overtime under the Fair Labor Standards Act (FLSA). Plaintiff Tyler Keen was employed by Defendant as a "H2S Safety Supervisor." Plaintiff was paid on a day-rate basis. Although he frequently worked many hours of overtime, Plaintiff was not paid overtime compensation of one-and-a-half times his regular rate for hours worked over forty each week. Plaintiff now moves for partial summary judgment on Defendant's affirmative defense that Plaintiff was exempt under the administrative exemption. Defendant is not entitled to rely upon the administrative exemption because Plaintiff and other H2S supervisors were not paid on a salary or fee basis as required by the FLSA, its implementing regulations, and the applicable case law.

### Factual and Procedural Background

Plaintiff worked for Defendant as an "H2S Safety Supervisor" from September 11, 2012 until April, 2015, when he transferred out of the division. His job duties included performing

H2S safety functions (setting up H2S monitors, monitoring for leaks and exposure, checking equipment, and keeping the drilling locations compliant with applicable OSHA regulations.

At the time of his initial hiring, Plaintiff signed an offer letter prepared by Defendant that set out the terms, conditions, and benefits of employment. See Exh. 1 (Bates DXP Keen 00002). The offer states that, after completing an initial two-month probationary period during which he would be paid on an hourly basis, Plaintiff would be paid a day rate of $250.00 with a per diem of $30.00. He also was to receive $15.00 per hour for "shop hours and administrative work." This meant work in Defendant's "shop" located in Carrizo Springs, Texas. The personnel action form completed by Defendant around this same time confirms this pay arrangement, including the day rate of $250.00 after Plaintiff completed his probationary period. See Exh. 2 (Bates DXP Keen 000003). Defendant's production included another personnel action form dated November 11, 2013 (after the completion of the probationary period) memorializing that Plaintiff was now receiving a day rate of $250. Exh. 3 (DXP Keen 00004). Plaintiff day rate was subsequently increased to $260, but effective February 2, 2015, after the prices of oil and gas fell sharply, Plaintiff's day rate was reduced from $260 to $208.00, and his hourly rate for "shop work" was reduced to $12.00. Exh. 4 (DXP Keen 00005).

The payroll records produced by Defendant during discovery confirm that Plaintiff was not paid on a fixed salary basis, and was not guaranteed any fixed weekly amount, let alone a fixed amount in excess of the statutorily required $455 per week for exempt administrative employees. Indeed, Plaintiff's gross pay varied widely from week to week depending upon the number of days that Plaintiff worked, the number of "shop" hours worked by Plaintiff, and the number of per diems earned. See Pay Records, Exh. 5. Although the pay records grossly devoid of details, it is clear that there are multiple weeks when Plaintiff earned less than $455. By way of example, for the two week pay period starting February 4, 2013 and ending February 17,

2

2013, Plaintiff earned gross pay of only $1120. See Exh. 6, pg. 1 (Bates DXP Keen 318). During the first workweek of this pay period, Plaintiff worked only one day. *Id.*, pg. 2 (Bates DXP Keen 226), and during the second week, he worked three days, *Id.* pg. 3 (Bates DXP Keen 227). Given that Plaintiff was earning a day rate of $250 and a per diem of $30, it is apparent that he earned only $250 (plus $30 per diem) during the first week of this two-week pay period.

Similarly, for the two-week pay period starting on February 18, 2013 and ending on March 3, 2013, Plaintiff received total pay of $2035. Exh. 6, pg. 4 (Bates DXP Keen 319). He worked seven days during the first week, *id.*, pg. 5 (Bates DXP Keen 228), and only five shop hours (no work that qualified for a day rate) in the second week, *id.* pg. 6 (Bates DXP Keen 229). Thus, in the second week of this pay period, Plaintiff earned only $75, which represents five hours at the shop rate of $15.

During the two-week pay period from May 26, 2014 to June 8, 2014, Plaintiff earned a total of $2080. *Id.*, pg. 7 (Bates DXP Keen 347). He worked only one day in the first week, *id.*, pg. 8 (Bates DXP Keen 293), and seven days during the second week, *id.* pg. 9 (Bates DXP Keen 294). Given that Plaintiff was earning a day rate of $260 at the time, and Defendant was no longer paying a per diem, it is apparent that Plaintiff was only paid $260 during the first week of this pay period.

Defendant's Vice President, Nick Little, confirmed in his deposition that H2S Supervisors were paid on a day-rate basis plus hourly pay when they performed routine work (i.e., work in the DXP shop), and that they were not paid an overtime premium for hours worked over forty. Little Dep. pp. 12-13, 16, Exh. 7. If they worked one day, they would get paid for one day; if they worked two days, they were paid two days; if they worked no days, they would not be paid at all, unless they had vacation pay. *Id.* at 16.

3

Likewise, Defendant's Vice President for Human Resources, Tracy Pawlak, confirmed that H2S supervisors were paid on a day rate basis and were only paid for the days they actually worked (unless they had vacation or sick pay coming to them). There was no weekly guarantee. If, for example, an H2S supervisor only worked one day in a given workweek, he would only be paid for one day. Pawlak Dep. pp. 4, 9-10. 15-16, Exh. 8. Interestingly, Pawlak explained that, when the Company first opened its operation out of the Dilley, Texas facility (where Plaintiff worked out of), H2S Supervisors were actually paid on a salary basis. However, several months later, the decision was made to convert these employees to day rate pay. *Id.* at 6-8. Based on her review of the FLSA regulations pertaining to the administrative exemption, Pawlak knew at the time that, in order to qualify for the administrative exemption, an employee must be paid on a salary or fee basis. *Id.* at 8-9.

Plaintiff filed this lawsuit on February 20, 2015. According to Pawlak, in March or April of 2015, Defendant stopped paying the H2S Supervisors on a day rate basis and converted them to hourly pay. *Id.* at 9. Little confirmed this at his deposition. Exh. 7, p. 17. This was several months after a collective action on behalf of DXP's safety technicians, who were also paid on a day rate basis, was filed against DXP. *See John T. Bouchard v. DXP Enterprises,* Case No. 5:14-cv-01089-JWP, In the United States District Court for the Western District of Texas, San Antonio Division. Indeed, Pawlak acknowledges that she learned at the end of 2014, or possibly the beginning of 2015, that employees were alleging that DXP had broken the law by not paying overtime to the H2S safety supervisors. At the time, Defendant was still paying its H2S safety supervisors on a day rate basis. Pawlak Dep. at 15 Exh. 8.

After Plaintiff filed this lawsuit, Defendant timely answered, and among other defenses, asserted that Plaintiff was exempt from the minimum wage and overtime requirements of the FLSA. Defendant subsequently clarified that it was relying on the administrative exemption.

4

**Summary Judgment Standard**

"Summary judgment is appropriate [if the summary judgment evidence shows] 'that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Mello v. Sara Lee Corp.*, 431 F.3d 440, 443 (5th Cir.2005) (quoting Fed. R. Civ. Proc. 56). "[W]e 'review the evidence and inferences to be drawn therefrom in the light most favorable to the non-moving party.'" *FDIC v. Laguarta*, 939 F.2d 1231, 1236 (5th Cir.1991) (quoting *Baton Rouge Bldg. & Constr. Council AFL-CIO v. Jacobs Constructors Inc.*, 804 F.2d 879, 881 (5th Cir.1986)).

If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence that would entitle it to a directed verdict if not controverted at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986). However, as in this case, if the burden of proof at trial lies with the nonmoving party, the movant may either (1) submit credible evidence that negates the existence of some material element of the opponent's claim or defense, or (2) demonstrate that the evidence in the record insufficiently supports an essential element or claim. *Id.* If the moving party meets its initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir.2006). "The nonmoving party, however, 'cannot satisfy this burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.'" *Id.* (quoting *Freeman v. Tex. Dep't of Crim. Justice*, 369 F.3d 854, 860 (5th Cir.2004)).

**Argument and Authorities**

Plaintiff is entitled to summary judgment on the application of the administrative exemption because Plaintiff was not paid on an salary or fee basis, and under the law, an

5

employer may not invoke the administrative exemption unless, among other requirements, Defendant can prove that the employee is paid on a salary or fee basis.

Section 7 of the FLSA requires employers to pay overtime to employees who work more than forty hours per week. Section 13(a)(1) exempts from the maximum hour provision employees occupying "bona fide executive, administrative, or professional" positions. That same section empowers the Secretary of Labor to define by regulation the terms "executive," "administrative," and "professional." Indeed, the Supreme Court has held that the Secretary has "broad authority" to "defin[e] and delimi[t]" the scope of the exemption for executive, administrative, and professional employees. § 213(a)(1), and has specifically endorsed the Secretary's chosen approach that exempt status requires that the employee be paid on a salary basis or fee. *Auer v. Robbins*, 117 S.Ct. 905, 909 (1997).

The Secretary has done so at 29 C.F.R. § 541.0 *et seq*. In addition, the Secretary has issued interpretations of those regulations, which are codified at 29 C.F.R. § 541.100 et seq. The § 13(a)(1) exemptions are "construed narrowly against the employer seeking to assert them," and the employer bears the burden of proving that employees are exempt. *Idaho Sheet Metal Works, Inc. v. Wirtz*, 383 U.S. 190, 206 (1966); *Tyler v. Union Oil Co. of Cal.*, 304 F.3d 379, 402 (5th Cir.2002).

A job title alone is insufficient to establish the exempt status of an employee. The exempt or nonexempt status of any particular employee must be determined on the basis of whether the employee's salary and duties meet the requirements of the regulations in this part." 29 C.F.R. § 541.2 (2004). The salary and duties of a person employed in a bona fide administrative capacity under the FLSA are:

> (1) Compensated on a salary or fee basis at a rate of not less than $455 per week ...;

> (2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and
>
> (3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200(a) (2004); *Zannikos v. Oil Inspections, Inc.*, 605 Fed.Appx. 349, 352 (5th Cir. 2015) (adopting the requirements of 29 CFR § 541.200(a), including requirement that employee be paid on a salary or fee basis); *Owens v. CEVA Logistics/TNT*, 2012 WL 6691115, *6 (S.D. Tex., Dec. 21, 2012) (same).

The implementing regulations further define what constitutes a "salary basis" and a "fee basis:"

> §541.602  Salary basis. (a) General rule. An employee will be considered to be paid on a "salary basis" within the meaning of these regulations if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed. Subject to the exceptions provided in paragraph (b) of this section, an exempt employee must receive the full salary for any week in which the employee performs any work without regard to the number of days or hours worked. Exempt employees need not be paid for any workweek in which they perform no work. An employee is not paid on a salary basis if deductions from the employee's predetermined compensation are made for absences occasioned by the employer or by the operating requirements of the business. If the employee is ready, willing and able to work, deductions may not be made for time when work is not available.
>
> 29 C.F.R. §541.602
>
> §541.605  Fee basis. (a) Administrative and professional employees may be paid on a fee basis, rather than on a salary basis. An employee will be considered to be paid on a "fee basis" within the meaning of these regulations if the employee is paid an agreed sum for a single job regardless of the time required for its completion. These payments resemble piecework payments with the important distinction that generally a "fee" is paid for the kind of job that is unique rather than for a series of jobs repeated an indefinite number of times and for which payment on an identical basis is made over and over again. Payments based on the number of hours or days

worked and not on the accomplishment of a given single task are not considered payments on a fee basis.

29 C.F.R. §541.605.

Although the parties to this case dispute whether Plaintiff's job duties qualified for the administrative exemption, there can be no dispute that Plaintiff and the other "H2S Supervisors" were not compensated on a "salary or fee basis of not less than $455 per week." The offer letter, personnel action forms, the testimony of Little and Pawlak, and Plaintiff's pay records all establish that Plaintiff was paid on a day rate basis (plus hourly compensation for certain work) and was not compensated on a salary or fee basis. *See* Exhs. 1-8 (described above in the Factual Background).

In its Responses to Plaintiff's First Request for Admissions, Defendant admits that Plaintiff was based on a day rate basis, but Defendant apparently also attempts to argue that this day rate also constituted a "salary." *See* Defendant's First Amended Responses to Plaintiff's First Request for Admissions, Exh. 9 (Response Nos. 1 & 2). However, payment on a day rate basis does not meet the requirements of 29 C.F.R. §541.602 because, by its very nature, compensation on a day rate basis does not constitute payment of a "predetermined amount" of at least $455 per week that is "not subject to reductions because of variations in the quality or quantity of work performed," and because Plaintiff was entitled to the day rate for only those days he actually worked.

Although, under 29 C.F.R. § 541.604(b), an exempt employee's pay may be computed on a day rate basis without losing the exemption, the employment arrangement must include a guarantee of at least $455 per week paid on a salary basis regardless of the number of hours, days, or shifts worked, and a reasonable relationship exists between the guaranteed amount and the amount actually earned. The reasonable relationship test will be met only "if the weekly

8

guarantee is roughly equivalent to the employee's usual earnings at the assigned hourly, daily or shift rate for the employee's normal scheduled workweek." Defendant cannot rely on Section 541.604(b) because, as explained above, there was no weekly guarantee of a fixed salary, let alone one in excess of $455 per week.

Indeed, Plaintiff's pay records conclusively establish that Plaintiff was not paid any predetermined amount for any week work by Plaintiff, and the amounts that Plaintiff received entirely depended upon the number of days, and in some instances, the number of hours worked by Plaintiff during a particular workweek. In fact, the pay records show that in some workweeks Plaintiff was paid less than $455. *See* Exh. 6 supra.

### Conclusion and Prayer

Accordingly, there can be no question whatsoever that Plaintiff was not paid on a salary basis, and therefore, Plaintiff could not be, and was not, exempt under the administrative exemption. Plaintiff is entitled to summary judgment negating the Defendant's reliance on the administrative exemption in this case. Plaintiff Tyler Keen also prays for all other relief to which he is entitled.

Respectfully submitted,

/s/ Michael V. Galo, Jr.
Michael V. Galo, Jr.
State Bar No. 00790734
Galo Law Firm, P.C.
4230 Gardendale, Bldg. 401
San Antonio, Texas  78229
Telephone -- 210.616.9800
Facsimile -- 210.616.9898
Attorney for Tyler Keen

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document has been served on counsel for Defendant on this 29th day of March, 2016, as follows:

Mario Barrera
Stephen J. Romero
Norton Rose Fulbright LLP
300 Convent Street, Suite 2100
San Antonio, Texas 78205-3792
**via Fax: 210.270-7205**

                                        /s/ Michael V. Galo, Jr.
                                        Michael V. Galo, Jr.